# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### December 11, 2012 Session

## STATE OF TENNESSEE v. WADE ALLEN WILLIS

**Direct Appeal from the Circuit Court for Maury County**
**No. 21084     Jim T. Hamilton, Judge**

---

**No. M2012-01577-CCA-R3-CD - Filed April 17, 2013**

---

Defendant, Wade Allen Willis, was indicted by the Maury County Grand Jury for the offenses of driving under the influence of intoxicants *per se* (DUI), violation of the registration law, violation of the financial responsibility law, and for failure to maintain control of his vehicle. The charges were the result of a traffic stop of Defendant by a state trooper of the Tennessee Highway Patrol. Defendant filed a motion to suppress evidence obtained as a result of his *arrest*, solely on the basis that his arrest "was without a warrant and without probable cause." Defendant did not assert that the officer lacked reasonable suspicion to initiate a stop of Defendant. Following a hearing on the motion to suppress, the trial court took the matter under advisement. The trial court subsequently entered a written order granting Defendant's motion to suppress all evidence obtained "following the initial detention and subsequent arrest." The State has appealed, following a *nolle prosequi* of the indictment. Following a thorough review we reverse the judgment of the trial court, reinstate the charges, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Mike Bottoms, District Attorney General; and Caleb Bayless, Assistant District Attorney General, for the appellant, State of Tennessee.

Gary Howell, Mt. Pleasant, Tennessee, (on appeal); and William C. Barnes, Columbia, Tennessee, (at trial), for the appellee, Wade Allen Willis.

# OPINION

Defendant's entire motion to suppress evidence states the following:

> Comes the Defendant, through counsel, and would move the Court for an Order suppressing from the trial of this cause any evidence obtained as the result of the arrest of the Defendant on February 19, 2011, including but not limited to the results of any test performed on Defendant's blood, and for grounds therefor would show that the arrest of the Defendant was without a warrant and without probable cause.

> **WHEREFORE**, Defendant prays that all evidence resulting from said arrest be excluded from the trial of this cause.

At the beginning of the suppression hearing Defendant's counsel reiterated that "our basic motion is that there was a lack of probable cause for the arrest." In Defendant's brief on appeal, it is abundantly clear that Defendant does not rely upon the ground that the officer lacked reasonable suspicion of criminal activity to justify the initial stop. The brief states in part, "[i]t is true that the [trial] Court also opines in its Order that the Trooper did not have reasonable grounds to even stop the [Defendant]. However, this was not the basis of [Defendant's] [m]otion [and] it was not argued by [Defendant]. . . "

Tennessee Highway Patrol Trooper Brandon McCauley, called by the State, was the only witness who testified at the suppression hearing. Defendant's counsel did not cross-examine Trooper McCauley. The officer identified a video played during the hearing as an accurate description of "what happened on the night in question." Trooper McCauley testified that he observed Defendant driving his vehicle in the left lane on the southbound side of Highway 43 South. Defendant's vehicle weaved in its lane and "also crossed the fog lines [sic] several times." The officer clarified that the line crossed was the yellow line on the left side of the road. This was on a divided highway, and Defendant pulled over to the left into the median dividing the southbound from the northbound lanes. Trooper McCauley testified that Defendant admitted he had drank one beer. At Trooper McCauley's request Defendant got out of his vehicle to perform field sobriety tests. Trooper McCauley testified that on the "9-step walk and turn" test, Defendant started too soon (before being instructed to do so), he made an improper turn, and he "stepped off the line." The officer testified that two or more "clues," implicitly such as these named observations, indicated a blood alcohol content of 0.08 or more. While performing the "one-leg stand" test, Defendant was swaying back and forth, and also put his foot down while it was supposed to be raised. On the "finger-to-nose" test, Defendant "completely missed his nose a couple of times, and was kind of slow the other time but did hit it." Trooper McCauley then placed Defendant under arrest

for DUI. At this point in Trooper McCauley's testimony, the prosecutor asked the officer if the blood alcohol test results had been determined. Defendant's counsel objected on the basis that information was not relevant because "[w]e're here talking about probable cause for the arrest."

We have reviewed the videotape which was made an exhibit at the suppression hearing. It shows the following. The public highway being driven upon by Defendant is a divided highway with two driving lanes and one left turn lane in the southbound side in which Defendant was driving when stopped. The audio-visual recording begins while Defendant is being pulled over and as he turns in to stop his vehicle in the median of the highway, just to the left of the left turn lane. Upon initial questioning by Trooper McCauley, Defendant stated he had drank two beers, with the second one finished approximately two hours prior to being pulled over. Defendant said he had been to a friend's house, but he did not know where the house was located. He later stated his friend lived in Santa Fe, a community in Maury County. Defendant stated that he had no medical problems and had not been taking any prescribed medications.

At the Trooper's suggestion, Defendant removed his cowboy boots prior to the sobriety tests. The first test administered was the 9-step heel-to-toe test. In the initial stage of instructions for the heel-to-toe test, Trooper McCauley stated, "I want you to put your right foot in front of your left foot." Defendant was standing on the fog line of the highway and immediately placed his right foot in front of his left foot. Trooper McCauley, at that point, told Defendant to not start the test until he (Defendant) was instructed to do so by Trooper McCauley. The trooper finished the instructions, and Defendant began the test. Defendant counted nine steps but actually took an extra tenth step. His pivot to turn around was awkward; Defendant placed his right foot out further than was instructed by Trooper McCauley, and Defendant also left the fog line and staggered while he was turning around.

On the one-leg stand, Defendant raised his right leg approximately six inches above the ground with his toes pointed out and down. Defendant's left foot raised up, causing Defendant to wobble at Defendant's count of "one thousand four" and at "one thousand twelve" Defendant dropped his right foot to the ground. He raised it back up and continued counting until "one thousand twenty-two" when the trooper told Defendant to stop. The tape of the finger to nose test was blurry at Defendant's face, but what can be observed is consistent with Trooper McCauley's testimony.

Defendant's speech did not seem to be slurred. He was not belligerent or obnoxious. When questioned, he correctly answered the time of night, the date, and his location. He stated that he was not a frequent drinker and only consumed alcoholic beverages about once each four months. At times during the process when Trooper McCauley asked Defendant

to stand still while the trooper attended to matters at his patrol car, Defendant stood erect without leaning against anything, did not sway, and stayed in his location without moving.

Approximately three months after the hearing, the trial court entered its order granting Defendant's motion to suppress. The findings of fact made by the trial court are:

> Trooper Brandon McCauley observed the defendant's car as the defendant weaved over into his lane crossing over and touching the yellow line briefly as the defendant traveled southbound on Highway 43/412 Bypass . . . at 1:37 a.m. The defendant told the trooper he had been visiting a friend in the Santa Fe area and had consumed two beers, the last beer being consumed some two hours before the stop.

> The trooper stopped the defendant and conducted three sobriety tasks [sic] 9-step-toe-to-toe, which after allowing the defendant to remove his cowboy boots, the defendant did well; one leg stand, officer reported the defendant did well only touching the ground one time while counting to twenty; finger-to-nose task [sic], the officer reporting that the Defendant missed his nose twice and was "kind of slow."

> The video camera was working properly at the time of the stop and did not show any particularly damaging evidence that the Defendant was impaired given the time of the stop which was in the early hours of the day.

The trial court made the following conclusions of law in making its determination that the motion to suppress should be granted:

> The driving behavior of the defendant in the case at bar, does not establish reasonable suspicion or probable cause that the defendant was committing an offense.

> . . .

> There are several [appellate court] decision[s] which demonstrate the standard for an officer to follow when observing a vehicle while contemplating a warrantless stop.

> None of these decisions require the vehicle to follow a perfect vector down the highway or whether there is a technical driving imperfection [sic].

The standard is whether under the totality of the circumstances the acts of the defendant develop into specific and articulable circumstances to justify seizing him.

The traffic stop of the vehicle in question was premature, and his driving behavior standing alone, did not give Trooper McCauley the requisite reasonable suspicion or probable cause to stop the defendant's vehicle.

Defendant has acknowledged from the outset that there was not a constitutional violation when Trooper McCauley initiated the stop. However, Defendant concedes in his brief that Trooper McCauley's observations of Defendant's driving prior to the stop are relevant to a determination of probable cause for arrest. In spite of his concession, Defendant asserts that the trial court's findings of fact regarding the impropriety of the initial stop are merely dictum. Defendant argues the trial court granted the motion to suppress based upon a lack of evidence to establish probable cause for the arrest of Defendant. Defendant relies upon the following finding of fact by the trial court;

The video camera was working properly at the time of the stop and did not show any particularly damaging evidence that the defendant was impaired given the time of the stop which was in the early hours of the day.

**Analysis**

Initially, we address Defendant's assertions that the State was not entitled to an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3(c). Defendant argues that since the substantive effect of the trial court's order did *not* result in a dismissal of the indictment, then in order to appeal, the State had to seek an interlocutory appeal by permission. *See* Tenn. R. App. P. 3(c)(1); *see also* Tenn. R. App. P. 9 and 10.

Defendant submits that the trial court did not suppress evidence of the field sobriety tests or any other evidence obtained prior to Defendant being formally placed under arrest. The State disagrees and correctly notes in its reply brief that a plain reading of the trial court's order reveals "all evidence gathered by police following the initial detention" means all evidence gathered after Defendant was pulled over and stopped by Trooper McCauley. We agree with the State. Defendant is not entitled to relief on his argument that the State's appeal should be dismissed.

As to the merits of this case, we will address only the issue presented by Defendant in his motion and consistently argued by Defendant in this appeal by the State: that Trooper

McCauley, while he had reasonable suspicion to *stop* Defendant to initiate an investigation, still lacked probable cause to *arrest* Defendant for DUI. The State has asserted in its brief that the trial court erred by granting the motion to suppress based solely upon the trooper's lack of reasonable suspicion to stop Defendant.

Notwithstanding the State's argument, reasonable suspicion to justify the stop is not an issue. The *only* issue than can be reviewed is whether probable cause existed to justify a warrantless arrest for DUI. The State failed to set forth any argument in its brief and reply brief concerning the issue actually pertinent on appeal, i.e., whether probable cause existed for Trooper McCauley to make a warrantless arrest of Defendant for DUI. Normally, failure to argue an issue, and/or cite to relevant legal authority on the issue waives consideration of the issue on appeal. *See* Tenn. R. App. P. 27(a)(7)(stating that appellant's brief must contain an argument "setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on; and . . . for each issue, a concise statement of the applicable standard of review"); Tenn. Ct. Crim. App. R. 10(b)("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Nevertheless, the record permits us to review the appropriate issue on its merits.

In reviewing a trial court's order disposing of a motion to suppress evidence, the appellate court must look to the evidence and facts accredited by the trial court which are most favorable to the prevailing party. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The appealing party, in this case, the State, bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *State v. Harts*, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). The findings of fact made by a trial judge on a motion to suppress are conclusive and are afforded the weight of a jury verdict. An appellate court may not set aside the trial court's decision unless the evidence in the record preponderates against the trial court's findings. *State v. Jackson*, 889 S.W.2d 219, 222 (Tenn. Crim. App. 1993). Questions of the credibility of the witnesses, the weight and value of the evidence, and a resolution of the conflicts in the evidence are matters entrusted to the trial judge. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

A warrantless arrest of a defendant based upon probable cause for the commission of the misdemeanor offense of DUI is permitted if the offense is committed in the officer's presence. Tenn. Code Ann. §§ 40-7-103(a)(1) and 40-7-118(b)(2)(A). The "probable cause" must be that the defendant has committed the offense of DUI. "Whether probable cause is present depends upon whether the facts and circumstances and reliable information known to the police officer at the time of the arrest 'were sufficient to warrant a prudent man in believing that the [individual] had committed an offense.'" *State v. Downey*, 945 S.W.2d

102, 106 (Tenn. 1997), quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *State v. Henning*, 975 S.W.2d 290, 300 (Tenn. 1998).

More recently, our supreme court has stated,

> A full-scale arrest supported by probable cause is, of course, an exception to the warrant requirements. *State v. Hanning*, 296 S.W.3d 44, 48 (Tenn. 2009) (citing *Brown v. Illinois*, 422 U.S. 590, 598, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). "Probable cause . . . exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are 'sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997) (second alteration in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *see also State v. Richards*, 286 S.W.3d 873, 879 (Tenn. 2009) ("[T]he 'prudent person' standard provides the best guidance for law enforcement officers and reviewing courts."). "Probable cause must be more than a mere suspicion." *State v. Lawrence*, 154 S.W.3d 71, 76 (Tenn. 2005) (citing *State v. Melson*, 638 S.W.2d 342, 350 (Tenn. 1982)). Nevertheless, probable cause "'deal[s] with probabilities[,] . . . not technicalities,] . . . the factual and practical considerations of everyday life on which reasonable and prudent [persons] . . . act.'" *State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

*State v. Echols*, 382 S.W.3d 266, 277-78 (Tenn. 2012).

We are constrained to conclude, based upon the uncontradicted testimony of Trooper McCauley, Defendant's appropriate concession that there was "reasonable suspicion" to make the stop, and our own viewing of the video tape of the detention prior to the arrest, that the evidence preponderates against the factual findings of the trial court. *See State v. Binette*, 33 S.W.3d 215, 219-20 (Tenn. 2000)(Appellate court "[e]qually as capable as the trial court" of reviewing videotaped evidence.). Specifically, we are referring to the trial court's factual findings that Defendant "did well" on the "9-step heel to toe" test, that the officer stated that Defendant "did well" on the one leg stand test, "only touching the ground one time while counting to twenty," and that the video of the tests "did not show any particularly damaging evidence that the defendant was impaired."

We have summarized in detail the evidence submitted at the suppression hearing. Defendant weaved while driving in his lane and crossed over the fog line on the left side of the lane "several times." Defendant's performance of the heel-to-toe test with at least two "clues" (made an improper turn, staggered and stepped off the line, took ten steps instead of nine) and at least two "clues" (dropped his foot and swayed) while performing the one leg stand test indicated a blood alcohol content of at least 0.08. Tennessee Code Annotated section 55-10-401 (a)(2) provides that a person who drives a vehicle on a public highway of the state with a blood alcohol concentration of 0.08 or more is guilty of DUI. Tennessee Code Annotated section 55-10-401 (a)(1) provides that DUI is also proven by evidence that a person drives a motor vehicle on the public highways of the state while under the influence of an intoxicant. Tennessee Code Annotated section 55-10-408 provides that a blood alcohol content of 0.08 or more creates a "presumption that the defendant's ability to drive was sufficiently impaired thereby to constitute a violation of Tenn. Code Ann. § 55-10-401(a)(1)." Also taking into consideration Defendant's admission that he had in fact consumed "two beers" on the night in question, and his poor performance on the "finger to nose" test, we conclude that there was probable cause to justify the arrest of Defendant for DUI. Accordingly, the State is entitled to relief in this appeal.

## CONCLUSION

The judgment of the trial court granting Defendant's motion to suppress evidence is reversed, all charges heretofore dismissed after the trial court granted the motion are hereby reinstated, and this case is remanded to the trial court for further proceedings.

_____
THOMAS T. WOODALL, JUDGE